# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.** 18 - 288 |
| **v.** | **VIOLATION:** |
| **CARLISLE HMA, LLC,** | **18 U.S.C. § 1349** |
| **Defendant.** | |

_____/

## PLEA AGREEMENT

The United States of America, by and through the Department of Justice, Criminal Division, Fraud Section (the "Fraud Section"), and the Defendant, Carlisle HMA, LLC formerly doing business as Carlisle Regional Medical Center (the "Defendant" or "Carlisle RMC"), by and through its undersigned attorneys, and through its authorized representative, pursuant to authority granted by the Board of Directors of Health Management Associates, LLC ("HMA"), the Defendant's indirect parent company, hereby submit and enter into this plea agreement (the "Agreement"), pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The terms and conditions of this Agreement are as follows:

### The Defendant's Agreement

1. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the Defendant agrees to waive its right to grand jury indictment and its right to challenge venue in the District Court for the District of Columbia, and to plead guilty to a one-count criminal Information charging the Defendant with conspiring under Title 18, United States Code, Section 1349 to commit health care fraud, Title 18, United States Code, Section 1347. The Defendant further agrees to persist in that plea through sentencing.

1

2. The Defendant understands that, to be guilty of these offenses, the following essential elements of the offense must be satisfied:

    a. The Defendant and one or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan;

    b. The Defendant knew the unlawful purpose of the plan, that is, a plan to commit health care fraud, as charged in the Information;

    c. The Defendant willfully joined in the unlawful plan;

    d. Each element of the offense listed above was committed by one or more of Defendant's agents;

    e. In committing those acts, the agent or agents intended, at least in part, to benefit the Defendant; and

    f. Each act was within the course and scope of the agent's or the agents' employment.

3. The Defendant understands and agrees that this Agreement is between the Fraud Section and the Defendant and does not bind any other division or section of the Department of Justice or any other federal, state, or local prosecuting, administrative, or regulatory authority. Nevertheless, the Fraud Section will bring this Agreement to the attention of other prosecuting authorities or other agencies, if requested by the Defendant.

4. The Defendant agrees that this Agreement will be executed by an authorized corporate representative. The Defendant further agrees that a resolution duly adopted by the Board of Directors of HMA, the Defendant's indirect parent company, authorizes the Defendant to enter into this Agreement and take all necessary steps to effectuate this Agreement, and that the

2

signatures on this Agreement by the Defendant and its counsel are authorized by the Board of Directors of HMA, the Defendant's indirect parent company, on behalf of the Defendant.

5.    The Defendant agrees that it has the full legal right, power, and authority to enter into and perform all of its obligations under this Agreement.

6.    The Fraud Section enters into this Agreement based on the individual facts and circumstances presented by this case and the Defendant. Among the factors considered were the following:

a.    HMA and its subsidiaries (including Carlisle RMC), affiliates, and parent company ("HMA Parent") have agreed to a global resolution of HMA's criminal and civil liability related to the United States' investigation of a fraudulent scheme to increase admissions at HMA hospitals, which has the following components:

1.    Carlisle RMC has agreed to plead guilty to one count of conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349, and to pay a $2,548,000 fine pursuant to this Agreement in relation to the conduct described in the Information and the Statement of Facts attached hereto (Exhibit 1);

2.    HMA has entered into a Non-Prosecution Agreement ("NPA"), which is incorporated by reference to this Agreement (Exhibit 2). The NPA requires, among other things: (1) HMA and HMA Parent to cooperate with the Fraud Section in any and all matters relating to the conduct under investigation by the Fraud Section; (2) HMA and HMA Parent to report evidence or allegations of actual or potential violations of Federal health care offenses to the Fraud

3

Section; and (3) HMA to pay a monetary penalty of $35,007,846;

3. HMA has agreed to pay $74,970,802 to the United States and the Medicaid Participating States to resolve its civil liability for certain related civil claims, including under the federal False Claims Act and state Medicaid False Claims Acts, pursuant to a civil Settlement Agreement, which is incorporated by reference into this Agreement (Exhibit 3);

4. HMA Parent has agreed to a Corporate Integrity Agreement with the Office of Inspector General of the Department of Health and Human Services (HHS-OIG) which is incorporated by reference into this Agreement (Exhibit 4); and

5. The global resolution, including the civil and administrative remedies, is contingent upon the Court's acceptance of the plea and recommended sentence in this case;

b. The nature and seriousness of the offense conduct, including that Carlisle RMC administrators participated in a scheme to defraud Federal health care programs, that is Medicare, Medicaid, and TRICARE, by unlawfully pressuring and inducing physicians to increase the number of emergency department patient admissions without regard to whether the admissions were medically necessary so that Carlisle RMC could bill and obtain reimbursement for higher-paying inpatient hospital care, as opposed to observation or outpatient care, from Federal health care programs and increase HMA's revenue;

c. In June 2017, HMA sold substantially all of Carlisle RMC's assets and

4

business operations pursuant to an asset sale agreement. Carlisle RMC currently has no operating assets and no plans to resume business operations.

7.    The Defendant agrees to abide by all terms and obligations of this Agreement as described herein, including, but not limited to, the following:

a.    to plead guilty as set forth in this Agreement;

b.    to abide by all sentencing stipulations contained in this Agreement;

c.    to appear, through its duly appointed representatives, as ordered for all court appearances, and obey any other ongoing court order in this matter, consistent with all applicable U.S. and foreign laws, procedures, and regulations;

d.    to commit no further crimes;

e.    to be truthful at all times with the Court; and

f.    to pay the applicable fine and special assessment.

### The United States' Agreement

8.    In exchange for the guilty plea of the Defendant and the complete fulfillment of all of its obligations under this Agreement, the Fraud Section agrees it will not file additional criminal charges against the Defendant or any of its direct or indirect affiliates, parents, subsidiaries, or joint ventures relating to (a) any of the conduct described in Exhibit 1, or (b) information made known to the Fraud Section prior to the date of this Agreement, except for the charges specified in the NPA between the Fraud Section and HMA. This Agreement does not close or preclude the investigation or prosecution of any natural persons, including any officers, directors, employees, agents, or consultants of the Defendant or its parent companies, direct or indirect affiliates, subsidiaries, or joint ventures, who may have been involved in any of the matters set forth in the Information, Exhibit 1, or in any other matters. The Defendant agrees that nothing in this

Agreement is intended to release the Defendant from any and all of the Defendant's excise and income tax liabilities and reporting obligations for any and all income not properly reported and/or legally or illegally obtained or derived.

**Factual Basis**

9. The Defendant is pleading guilty because it is guilty of the charges contained in the Information. The Defendant admits, agrees, and stipulates that the factual allegations set forth in the Information and Exhibit 1 are true and correct, that it is responsible for the acts of its officers, directors, employees, and agents described in the Information and Exhibit 1, and that the Information and Exhibit 1 accurately reflect the Defendant's criminal conduct.

**The Defendant's Waiver of Rights, Including the Right to Appeal**

10. Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 limit the admissibility of statements made in the course of plea proceedings or plea discussions in both civil and criminal proceedings, if the guilty plea is later withdrawn. The Defendant expressly warrants that it has discussed these rules with its counsel and understands them. Solely to the extent set forth below, the Defendant voluntarily waives and gives up the rights enumerated in Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Specifically, the Defendant understands and agrees that any statements that it makes in the course of its guilty plea or in connection with the Agreement are admissible against it for any purpose in any U.S. federal criminal proceeding if, even though the Fraud Section has fulfilled all of its obligations under this Agreement and the Court has imposed the agreed-upon sentence, the Defendant nevertheless withdraws its guilty plea.

11. The Defendant is satisfied that the Defendant's attorneys have rendered effective assistance. The Defendant understands that by entering into this agreement, the Defendant

6

surrenders certain rights as provided in this agreement. The Defendant understands that the rights of criminal defendants include the following:

(a) the right to plead not guilty and to persist in that plea;

(b) the right to a jury trial;

(c) the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings;

(d) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses; and

(e) pursuant to Title 18, United States Code, Section 3742, the right to appeal the sentence imposed.

Nonetheless, the Defendant knowingly waives the right to appeal or collaterally attack the conviction and any sentence within the statutory maximum described below (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever except those specifically excluded in this Paragraph, in exchange for the concessions made by the United States in this plea agreement. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The Defendant also knowingly waives the right to bring any collateral challenge challenging either the conviction, or the sentence imposed in this case. The Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5,

United States Code, Section 552a. The Defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution related to the conduct described in Exhibit 1 or the Information, including any prosecution that is not time-barred on the date that this Agreement is signed in the event that: (a) the conviction is later vacated for any reason; (b) the Defendant violates this Agreement; or (c) the plea is later withdrawn, provided such prosecution is brought within one year of any such vacation of conviction, violation of agreement, or withdrawal of plea plus the remaining time period of the statute of limitations as of the date that this Agreement is signed. The Fraud Section is free to take any position on appeal or any other post-judgment matter. The parties agree that any challenge to the Defendant's sentence that is not foreclosed by this Paragraph will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver. Nothing in the foregoing waiver of appellate and collateral review rights shall preclude the Defendant from raising a claim of ineffective assistance of counsel in an appropriate forum.

### Penalty

12. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is a fine of $500,000 or twice the gross pecuniary gain or gross pecuniary loss resulting from the offense, whichever is greatest, Title 18, United States Code, Section 3571(c), (d); five years' probation, Title 18, United States Code, Section 3561(c)(1); and a mandatory special assessment of $400 per count, Title 18, United States Code, Section 3013(a)(2)(B).

### Sentencing Recommendation

13. The parties agree that pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the Court must determine an advisory sentencing guideline range pursuant to the United States

Sentencing Guidelines. The Court will then determine a reasonable sentence within the statutory range after considering the advisory sentencing guideline range and the factors listed in Title 18, United States Code, Section 3553(a). The parties' agreement herein to any guideline sentencing factors constitutes proof of those factors sufficient to satisfy the applicable burden of proof. The Defendant also understands that if the Court accepts this Agreement, the Court is bound by the sentencing provisions in Paragraph 15.

14.     The Fraud Section and the Defendant agree that Defendant's Guidelines fine range is calculated as follows:

    a.    The 2016 U.S.S.G. are applicable to this matter.

    b.    <u>Offense Level</u>. Based upon U.S.S.G. § 2B1.1, the total offense level is 21, calculated as follows:

| (a)(1) | Base Offense Level | 7 |
|---|---|---|
| (b)(1)(G) | Amount of Loss | +12 |
| (b)(10) | Sophisticated Means | +2 |
| **TOTAL** | | 21 |

    c.    <u>Base Fine</u>. Based upon U.S.S.G. § 8C2.4(a)(2) and § 8C2.4(e), the base fine is $910,000.

    d.    <u>Culpability Score</u>. Based upon U.S.S.G. § 8C2.5, the culpability score is 7, calculated as follows:

| (a) | Base Culpability Score | 5 |
|---|---|---|
| (b)(3)(A)(i) | the organization had 200 or more employees and an individual within high-level personnel of the organization participated in, condoned, or was willfully ignorant of the offense | +3 |
| (g)(3) | The organization clearly demonstrated recognition and affirmative acceptance of responsibility for its | |

9

| criminal conduct | - 1 |
|---|---|
| **TOTAL** | 7 |

Calculation of Fine Range:

| | |
|---|---|
| Base Fine | $910,000 |
| Multipliers | 1.4(min)/2.8 (max) |
| Fine Range | $1,274,000 (min)/ $2,548,000 (max) |

15.     Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Fraud Section and the Defendant agree that the appropriate disposition of the case is as follows, taking into consideration all of the factors outlined in Paragraph 6 and in 18 U.S.C. §§ 3553(a) and 3572:

        a.      <u>Fine</u>. The Defendant shall pay a criminal fine of $2,548,000, payable in full within 10 business days after the sentencing  The Defendant shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty amounts that Defendant pays (1) pursuant to the Agreement, or (2) any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in Exhibit 1, except as amounts identified as restitution in a settlement agreement or court order pursuant to 26 U.S.C. § 6050x. The Defendant further acknowledges that no tax deduction may be sought in connection with the payment of any part of this $2,548,000 fine.

        b.      <u>Mandatory Special Assessment</u>. The Defendant shall pay to the Clerk of the Court for the United States District Court for the District of Columbia within ten business days of the time of sentencing the mandatory special assessment of $400 per count.

        c.      <u>Restitution</u>. The Department agrees that it will not seek a separate

10

restitution order and the parties agree that the appropriate disposition of this case does not include a restitution order under 18 U.S.C. § 3663A(c)(1)(A)(ii) for the Federal health care program victims in light of HMA's agreement to pay a civil settlement amount of $74,970,802 to the United States and the Medicaid Participating States under the related civil Settlement Agreement, a portion of which will satisfy the restitution amount owed by the Defendant to the Federal health care program victims.

16. This Agreement is presented to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). The Defendant understands that the Court retains complete discretion to accept or reject the recommended sentence provided for in Paragraph 15 of this Agreement. The Defendant understands that, if the Court rejects this Agreement, the Court must: (a) inform the parties that the Court rejects the Agreement; (b) advise the Defendant's counsel that the Court is not required to follow the Agreement and afford the Defendant the opportunity to withdraw its plea; and (c) advise the Defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the Defendant than the Agreement contemplated. The Defendant further understands that if the Court refuses to accept any provision of this Agreement, neither party shall be bound by the provisions of the Agreement.

17. The Fraud Section and the Defendant jointly submit that this Plea Agreement, together with the record that will be created by the Fraud Section and the Defendant at the plea and sentencing hearings, will provide sufficient information concerning the Defendant, the crime charged in this case, and the Defendant's role in the crime to enable the meaningful exercise of sentencing authority by the Court under 18 U.S.C. § 3553(a).

18. The Fraud Section and the Defendant agree, subject to the Court's approval, to waive the requirement for a presentence report, pursuant to Federal Rule of Criminal Procedure

11

32(c)(1)(A), based on a finding by the Court that the record contains information sufficient to enable the Court to meaningfully exercise its sentencing power and to seek sentencing by the Court immediately following the Rule 11 plea hearing. However, the parties agree that in the event the Court orders that the entry of the guilty plea and sentencing occur at separate proceedings, such an order will not affect the agreement set forth herein. Additionally, if the Court directs the preparation of a presentence report, the Fraud Section and the Defendant have the right to inform the Court and the Probation Office of all facts, circumstances, and law related to the Defendant's case, and to respond to any questions from the Court and the Probation Office, and to any misstatements of law or fact. At the time of the plea hearing, the parties will suggest mutually agreeable and convenient dates for the sentencing hearing with adequate time for any objections to the presentence report, and consideration by the Court of the presentence report and the parties' sentencing submissions.

## Breach of Agreement

19. This Plea Agreement is effective when signed by the Defendant, the Defendant's attorney, and an attorney representative of the Fraud Section.

20. In the event the Fraud Section determines that the Defendant has breached this Agreement, the Fraud Section agrees to provide the Defendant with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Defendant shall have the opportunity to respond to the Fraud Section in writing to explain the nature and circumstances of such breach, as well as the actions the Defendant has taken to address and remediate the situation, which explanation the Fraud Section shall consider in determining whether to pursue prosecution of the Defendant.

12

21.     In the event the Fraud Section determines that the Defendant has breached the Agreement, the Fraud Section may, at its sole discretion, be released from its commitments under this Plea Agreement in its entirety by notifying the Defendant, through counsel, in writing. The Fraud Section may also pursue all remedies available under the law, even if it elects not to be released from its commitments under the Agreement.

22.     In the event that the Fraud Section determines that the Defendant has breached any material provision of this Agreement: (a) all statements made by or on behalf of the Defendant to the Fraud Section or to the Court, including the attached Statement of Facts, and any testimony given by the Defendant before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Fraud Section against the Defendant; and (b) the Defendant shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Defendant prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Defendant, will be imputed to the Defendant for the purpose of determining whether the Defendant has violated any provision of this Agreement shall be in the sole discretion of the Fraud Section.

23. The Defendant understands and agrees that this Rule 11(c)(1)(C) plea agreement and its agreed-upon disposition:

a. are wholly dependent upon: (1) HMA and HMA Parent's compliance with the material terms of the attached NPA; and (2) HMA's timely compliance with the material terms of the attached civil Settlement Agreement; and

b. failure by (1) the Defendant to comply fully with the material terms of this Agreement, (2) by HMA and HMA Parent to comply fully with the terms of the attached NPA, or by HMA to comply fully with the material terms of the civil Settlement Agreement will constitute a breach of this Agreement.

24. In the event the Defendant at any time hereafter breaches any material term of this Agreement, the Defendant understands that (1) the Fraud Section will, as of the date of the breach, be relieved of any obligations it may have in this Agreement and the attached NPA, including but not limited to the promise to not further prosecute the Defendant as set forth in the Agreement; and (2) the Defendant will not be relieved of its obligation to make the payments set forth in this Agreement, nor will it be entitled to a return of any monies paid. Moreover, in the event of a material breach of this Agreement, the Defendant agrees and understands that the Fraud Section may pursue any and all charges that might otherwise not have been brought but for this Agreement, and the Defendant hereby waives, and agrees it will not interpose, any defense to any charges brought against it which it might otherwise be able to assert under the Constitution for pre-indictment delay, any statute of limitations, or the Speedy Trial Act.

### Public Statements by the Defendant

25. The Defendant expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the

Defendant make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Defendant set forth above or the facts described in the Information and Exhibit 1. Any such contradictory statement shall, subject to cure rights of the Defendant described below, constitute a material breach of this Agreement, and the Defendant thereafter shall be subject to prosecution as set forth in Paragraphs 19-24 of this Agreement. The decision whether any public statement by any such person contradicting a fact contained in the Information or Exhibit 1 will be imputed to the Defendant for the purpose of determining whether it has breached this Agreement shall be at the sole discretion of the Fraud Section. If the Fraud Section determines that a public statement by any such person contradicts in whole or in part a statement contained in the Information or Exhibit 1, the Fraud Section shall so notify the Defendant, and the Defendant may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification. The Defendant shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Information and Exhibit 1 provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Information or Exhibit 1. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Defendant in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Defendant.

26. The Defendant agrees that if it or any of its direct or indirect parents, subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Defendant shall first consult the Fraud Section to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters

15

between the Fraud Section and the Defendant; and (b) whether the Fraud Section has any objection to the release or statement.

## Complete Agreement

27. This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**AGREED:**

**FOR CARLISLE HMA, LLC:**

Date: _____  By: _____
Christopher G. Cobb
Vice President – Legal and Corporate Secretary of HMA

Date: _____  By: _____
Richard A. Sauber
Robbins, Russell, Englert, Orseck,
   Untereiner & Sauber LLP
Outside Counsel for Carlisle HMA, LLC

**FOR THE DEPARTMENT OF JUSTICE:**

Date: 9/24/2018

SANDRA L. MOSER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

ROBERT A. ZINK
Acting Principal Deputy Chief, Fraud Section

JOSEPH S. BEEMSTERBOER
Deputy Chief, Fraud Section

SALLY B. MOLLOY
Assistant Chief, Fraud Section

17

## Complete Agreement

27. This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**AGREED:**

**FOR CARLISLE HMA, LLC:**

Date: 9/21/2018     By: _____
                        Christopher G. Cobb
                        Secretary of HMA

Date: _____     By: _____
                        Richard A. Sauber
                        Michael L. Waldman
                        Robbins, Russell, Englert, Orseck,
                          Untereiner & Sauber LLP
                        Outside Counsel for Carlisle HMA, LLC

**FOR THE DEPARTMENT OF JUSTICE:**

Date: _____

SANDRA L. MOSER
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

ROBERT A. ZINK
Acting Principal Deputy Chief, Fraud Section

JOSEPH S. BEEMSTERBOER
Deputy Chief, Fraud Section

_____
SALLY B. MOLLOY
Assistant Chief, Fraud Section

## Complete Agreement

27. This document states the full extent of the Agreement between the parties. There are no other promises or agreements, express or implied. Any modification of this Agreement shall be valid only if set forth in writing in a supplemental or revised plea agreement signed by all parties.

**AGREED:**

**FOR CARLISLE HMA, LLC:**

Date: _____ By: _____
                                     Christopher G. Cobb
                                     Secretary of HMA

Date: _Sept 21, 2018_ By: _____
                                     Richard A. Sauber
                                     Michael L. Waldman
                                     Robbins, Russell, Englert, Orseck,
                                         Untereiner & Sauber LLP
                                     Outside Counsel for Carlisle HMA, LLC

**FOR THE DEPARTMENT OF JUSTICE:**

Date: _____

                                     SANDRA L. MOSER
                                     Acting Chief, Fraud Section
                                     Criminal Division
                                     U.S. Department of Justice

                                     ROBERT A. ZINK
                                     Acting Principal Deputy Chief, Fraud Section

                                     JOSEPH S. BEEMSTERBOER
                                     Deputy Chief, Fraud Section

                                     _____

                                     SALLY B. MOLLOY
                                     Assistant Chief, Fraud Section